UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

TARA PASSONI,

                     Plaintiff,          **MEMORANDUM AND ORDER**

      v.                                       24-cv-1702 (ST)

EARLY WARNING SERVICES, LLC,

                     Defendant.
------------------------------------------------------------X
**TISCIONE, United States Magistrate Judge:**

      Tara Passoni ("Plaintiff") sued her former employer, Early Warning Services, LLC ("Defendant" or "EWS"), for retaliation claims under the Americans with Disabilities Act ("ADA"), New York State Human Rights Law ("NYSHRL"), and New York Labor Law ("NYLL"). *See generally* Compl., ECF No. 1. Before this Court is Defendant's motion to dismiss the Complaint for failure to state a claim (the "Motion"). For the reasons discussed below, the Motion is DENIED.

## BACKGROUND[1]

      Plaintiff began working for Defendant, a fintech company, in 2021. *Id.* ¶¶ 4, 12. Throughout her employment, Plaintiff received several promotions and salary increases, and never any disciplinary or "corrective" actions. *Id.* ¶¶ 13, 14. On or about May 5, 2023, an individual named Erica (last name unknown) contacted Plaintiff via Microsoft Teams and left a message asking Plaintiff to call back as soon as possible. *Id.* ¶ 16. The next day, Plaintiff returned Erica's call. *Id.* ¶ 17. Erica told Plaintiff that she was contacting Plaintiff on behalf of her friend, Jane

---

[1] The Court takes the factual allegations from the Complaint and assumes that they are true for purposes of this Motion. *See Gamm v. Sanderson Farms, Inc.*, 944 F.3d 455, 458 (2d Cir. 2019).

Doe,[2] one of Plaintiff's subordinate employees, because Ms. Doe had been admitted to the hospital following a suicide attempt. *Id.* ¶ 18. Plaintiff promptly informed her supervisor, Michael Cahill, that she had become aware of a "HIPAA issue," as she had assumed that the information regarding Ms. Doe warranted confidentiality. *Id.* ¶ 19. At that time, Plaintiff did not inform Mr. Cahill of Ms. Doe's suicide attempt. *Id.* Mr. Cahill directed Plaintiff to contact human resources ("HR"). *Id.* ¶ 20.

On or about May 9, 2023, Plaintiff spoke with Martha Schneberger, a member of Defendant's HR department. *Id.* ¶ 21. Ms. Schneberger allegedly asked Plaintiff to document her conversation with Erica. *Id.* ¶ 22. Plaintiff did so, emailing a written account of her conversation with Erica to Ms. Schneberger and another HR employee (whose name Plaintiff cannot remember). *Id.* Plaintiff also spoke to that other HR employee, who allegedly directed Plaintiff to have no further contact with Ms. Doe without first contacting HR. *Id.* ¶ 23.

According to Plaintiff, at the time of her conversation with Ms. Schneberger, Ms. Schneberger "was more concerned with Ms. Doe's providing Erica access to EWS' Microsoft Teams application than Ms. Doe's attempted suicide." *Id.* ¶ 24. On or about May 10, 2023, Ms. Schneberger allegedly asked Plaintiff to inform Ms. Doe that her Teams account was being shut down due to a possible security violation—*i.e.* Ms. Doe's providing Erica access to Teams. *Id.* ¶ 25. Plaintiff did so. *Id.*

On or about May 16, 2023, Plaintiff saw that Mr. Cahill had placed a meeting on her calendar for May 17, 2023. *Id.* ¶ 26. Plaintiff asked Mr. Cahill the purpose of the meeting, to which Mr. Cahill allegedly responded that the meeting was to discuss and "role play" Ms. Doe's termination. *Id.* ¶ 27. Plaintiff asked Mr. Cahill why Defendant was terminating Ms. Doe, to

---

[2] Plaintiff uses a pseudonym to identify the employee to protect the employee's privacy. Compl. ¶ 18, n.1.

2

which Mr. Cahill allegedly responded that it was because Ms. Doe had allowed a non-employee to access her Teams account, which was a security violation. *Id.* ¶ 28. Plaintiff was allegedly shocked with Defendant's decision to terminate Ms. Doe and asked Mr. Cahill whether he knew why Ms. Doe had allegedly breached the security protocol. *Id.* ¶ 29. According to Plaintiff, Mr. Cahill said no, at which point Plaintiff informed Mr. Cahill of Ms. Doe's suicide attempt. *Id.*

Plaintiff claims that she "explained to Mr. Cahill her belief that Ms. Doe should not be terminated . . . for a minor policy violation, given Ms. Doe's suicide attempt and apparent mental health crisis." *Id.* ¶ 30. Plaintiff further claims that she "suggested that EWS could, for example, put Ms. Doe on a leave of absence or provide a warning or less severe disciplinary action than termination." *Id.* ¶ 31. Allegedly, Mr. Cahill rejected these suggestions and stated that Ms. Doe's employment would be terminated. *Id.* ¶ 32.

Plaintiff allegedly informed Mr. Cahill that she was unwilling to terminate Ms. Doe's employment, saying "I can't lead for you if you turn your back on my people in their time of greatest need," or words to that effect. *Id.* ¶ 33. Plaintiff further questioned Mr. Cahill as to what would have happened if Ms. Doe had actually committed suicide. *Id.* ¶ 34. Mr. Cahill allegedly responded, "[t]hat's not our responsibility, it's the company over the employees," or words to that effect. *Id.* ¶ 35. Plaintiff allegedly "replied that she was 'not for sale' and . . . threatened to resign if she was required to illegally terminate Ms. Doe." *Id.* ¶ 36.

Within hours of Plaintiff's refusal to terminate Ms. Doe, EWS informed Plaintiff that it had accepted her resignation and that her employment was terminated. *Id.* ¶ 37. Plaintiff allegedly responded via email to protest her separation and Defendant's handling of the events regarding Ms. Doe. *Id.* ¶ 38. Plaintiff alleges that she did not resign, and that her employment was "involuntarily terminated" in response to her opposing the decision to terminate Ms. Doe. *Id.* ¶

3

39.  Plaintiff alleges, upon information and belief, that Defendant later terminated Ms. Doe.  *Id.* ¶ 40.

## LEGAL STANDARD

Defendant moves to dismiss the Complaint for failure to state a claim under Federal Rule 12(b)(6) of Civil Procedure.  *See* Fed. R. Civ. P. 12(b)(6).  To survive such a motion, a complaint must contain sufficient facts that, when accepted as true, state "a claim to relief that is plausible on its face."  *Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the factual allegations allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  In doing so, the Court "must construe [the complaint] liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiff['s] favor."  *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106–07 (2d Cir. 2021) (citing *Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019)).  However, allegations that "are no more than conclusions are not entitled to the assumption of truth."  *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010); *see Iqbal*, 556 U.S. at 678.

## DISCUSSION

For the reasons explained below, the Motion is denied.  Defendant's arguments for dismissal are largely inappropriate at this stage.  Defendant draws inferences in its own favor, rather than Plaintiff's, which the Court may not do on a motion to dismiss.[3]  *See Witcher v. New*

---

[3] Defendant claims to do otherwise, stating in its memorandum of law that it "states the facts as alleged in the Complaint and in the light most favorable to Plaintiff for the purposes of this Motion only."  Def.'s Mem. Supp. at 2 n.1, ECF No. 15.

4

*York City Dep't of Educ.*, 23-465, 2024 WL 3220264, at *3 (2d Cir. June 28, 2024) (summary order) ("drawing all reasonable inference in [the plaintiff's] favor" to hold that the plaintiff plausibly alleged an ADA retaliation claim).  Similarly, Defendant argues that certain factual events alleged in the Complaint never occurred, and that certain allegations "prove" what Plaintiff did or not did not believe.  *See, e.g.*, Def.'s Mem. Supp. at 9.  These arguments are improper at the motion to dismiss stage, as the Court must accept the facts alleged as true and assess what Plaintiff has alleged—not what she has proved.  Rather, those issues are properly, and best, resolved at later stages of litigation after the parties have conducted discovery.  As Plaintiff has indeed alleged a plausible claim for relief, this case should proceed to discovery.

## I.    ADA & NYSHRL RETALIATION CLAIMS[4]

The ADA prohibits retaliation against any individual who "has opposed any act or practice made unlawful by this chapter." 42 U.S.C. § 12203(a).  For an ADA retaliation claim to survive a motion to dismiss, a plaintiff must "plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against him, (2) 'because' he has opposed any unlawful employment practice." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015); *see Pediford-Aziz v. City of New York*, 170 F. Supp. 3d 480, 485 (E.D.N.Y. 2016) ("To survive a motion to dismiss, an employee need not specifically plead every element [of a retaliation claim]; she must allege just enough factual matter to render the retaliation claims plausible.").

The NYSHRL prohibits retaliation "against any person because he or she has opposed any practices forbidden under [the NYSHRL] or because he or she has filed a complaint, testified or assisted in any proceeding under [the NYSHRL]." N.Y. Exec. Law § 296(7).  "Courts evaluate ADA retaliation and NYSHRL retaliation claims under the same legal framework." *Samuels v.*

---

[4] Defendant groups together its arguments for dismissal of both the ADA and NYSHRL retaliation claims. *See* Def.'s Mem. Supp. at 2–8; Reply at 4–10.

5

*Urban Assembly Charter Sch. for Comput. Sci.*, 23-cv-1379 (RA), 2024 WL 4008165, at *11 (S.D.N.Y. Aug. 30, 2024); *see Nofal v. IMCMV Times Square LLC*, 22-cv-3104 (DEH), 2024 WL 1138928, at *10 (S.D.N.Y. Mar. 15, 2024) (noting that the standards for evaluating NYSHRL retaliation claims "either parallel or are more generous to plaintiffs than those under the ADA"); *Luzunaris v. Baly Cleaning Servs.*, 23-cv-11137 (GHW), 2024 WL 3926708, at *19 (S.D.N.Y. July 29, 2024) ("The same standards govern retaliation under . . . the NYSHRL . . . as well as under the ADA.").

Defendant only disputes whether Plaintiff's objection to Ms. Doe's termination amounted to opposition of an unlawful employment practice. In other words, Defendant contests whether Plaintiff has sufficiently alleged that she engaged in protected activity. As relevant here, protected activity includes complaining to a supervisor about an employer's unlawful discrimination. *Hubbard v. Total Comms., Inc.*, 347 F. App'x 679, 681 (2d Cir. 2009); *McSweeney v. Cohen*, --- F.Supp.3d ----, 2025 WL 966022, at *25 (S.D.N.Y. Mar. 31, 2025); *see Flieger v. E. Suffolk BOCES*, 693 F. App'x 14, 18 (2d Cir. 2017) ("Activities protected by the ADA include complaints of ADA discrimination, including complaints . . . that the employer's actions violated the ADA"); *see also Wong v. Blind Brook-Rye Union Free Sch. Dist.*, 20-cv-2718 (CS), 2022 WL 17586324, at *10 (S.D.N.Y. Dec. 12, 2022) ("for an employee's complaints to be a protected activity they must relate to an alleged violation of [anti-discrimination law].").

Such a complaint "need not have had merit to make it a protected activity." *McSweeney*, 2025 WL 966022, at *25; *see Sharikov v. Philips Medical Sys. MR, Inc.*, 103 F.4th 159, 170 (2d Cir. 2024) ("An employee can satisfy the protected activity requirement even if his condition was not a disability within the meaning of the ADA" (quotations and citations omitted)); *Colon v. City of New York*, 16-cv-4540 (VSB), 2023 WL 6497650, at *3 (S.D.N.Y. Oct. 5, 2023) (noting that the

6

plaintiff "need not prove that the underlying employment practice was in fact unlawful"). The plaintiff need only show "that he possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated th[e] law." *Ibela v. Allied Universal*, 21-1995, 2022 WL 1418886, at *2 (2d Cir. May 5, 2022) (summary order) (citing *Muller v. Costello*, 187 F.3d 298, 311 (2d Cir. 1999)).

Complaints of unlawful conduct may be "thin" and "far from maximally pellucid" but nevertheless constitute protected activity when construed in the plaintiff's favor. *Farmer v. Shake Shack Enters. LLC*, 473 F.Supp.3d 309, 331–32 (S.D.N.Y. 2020) (holding that "far from maximally pellucid" complaint of pregnancy discrimination was protected activity under Title VII); *Brown v. Fat Dough Incorp.*, 22-cv-761 (BKS), 2024 WL 1345360, at *12 (N.D.N.Y. Mar. 29, 2024) ("While the Court agrees with Defendant that Plaintiff's allegations are thin, they are sufficient to allow a plausible inference of protected activity under the ADA and Title VII.").

Here, Plaintiff has plausibly alleged that she engaged in protected activity by opposing an employment practice that she reasonably believed to be unlawful. At bottom, construing the allegations and drawing reasonable inferences in Plaintiff's favor, Plaintiff alleges that she opposed Defendant discriminatorily terminating Ms. Doe for her health condition.[5] The Complaint "depicts [Plaintiff]'s complaints [to Defendant] as made in good faith and there is no basis on the pleadings to infer otherwise." *Farmer*, 473 F.Supp.3d at 332. As such, Plaintiff has plausibly alleged that she engaged in protected activity.

Yet, Defendant argues that Plaintiff's objection to Ms. Doe's termination "is devoid of any facts suggesting that her objection was directed at conduct prohibited by the ADA and the

---

[5] *I.e.* Ms. Doe's suicide attempt and subsequent hospitalization.

7

NYSHRL . . . ." Def.'s Mem. Supp. at 8. This Court is unconvinced, especially because Defendant's argument is based on an unfavorable construction of Plaintiff's allegations.

For example, Defendant argues that Plaintiff's statement that she could not "lead for you if you turn your back on my people in their time of greatest need," does "not provide any indication that Plaintiff believed EWS' conduct was unlawful and/or constituted disability discrimination." Def.'s Mem. Supp at 8. Indeed, "[c]omplaining about general unfairness, unaccompanied by any indication that . . . protected class status caused the unfairness, does not qualify as protected activity." *Wong*, 2022 WL 17586324, at *10 (citations omitted). "The onus is on the speaker to clarify to the employer that [she] is complaining of unfair treatment due to [her] membership in a protected class and that [she] is not complaining merely of unfair treatment generally." *Butler v. City Sch. Dist. of New Rochelle*, 19-cv-7395 (VB), 2020 WL 6639121, at *2 (S.D.N.Y. Nov. 12, 2020); *see Lewis v. Kaleida Health*, 20-cv-1860 (LJV) 2022 WL 4485288, at *7 (W.D.N.Y. Sept. 27, 2022) ("although Lewis alleges that she complained to management generally about 'perceived 'unfair' treatment' and workplace violations, her alleged complaints did not 'link the [perceived unfair] treatment' to any protected status." (brackets in original)). Here, however, Plaintiff did not complain about general unfairness, as her comments plainly invoked that the alleged unfairness at issue was due to Ms. Doe's health condition. *See* Compl. ¶¶ 29–36. As such, construing Plaintiff's statement in her favor, the mention of "turn[ing]" a "back" on someone in their "time of greatest need" refers to Defendant terminating Ms. Doe for her health condition—something that Plaintiff could plausibly believe to be unlawful under the ADA and NYSHRL. *Id.* at ¶ 33.

Defendant also insists that it could not have "reasonably understood [Plaintiff's objection] to be directed at such prohibited conduct," because, according to Defendant, Plaintiff's objection to Ms. Doe's termination was based on "moral" or "personal" grounds, rather than legal ones.

8

Def.'s Mem. Supp. at 1, 8.  In Defendant's view, "the substance of Plaintiff's complaint only indicates at most that she was morally opposed to the type of discipline being imposed on Ms. Doe, which is insufficient to establish that she engaged in a protected activity."  Reply at 8, ECF No. 17.

However, Plaintiff need not say that she was "legally opposed" to conduct rather than "morally opposed" to conduct.  In fact, a plaintiff asserting a retaliation claim need not inform the defendant, when making their complaint, which law the defendant is violating.  *See Brummell v. Webster Central Sch. Dist.*, 6-cv-6437, 2009 WL 232789, at *6 (W.D.N.Y. 2009) ("a plaintiff need not explicitly allege a violation of Title VII for his or her conduct in making a complaint about working conditions to be considered protected activity").  Rather, the relevant inquiry is whether the defendant could have reasonably understood the plaintiff's complaint to be about unlawful discrimination.  *See McSweeney*, 2025 WL 966022, at *25.  As the Court in *Brummell*—a case that Defendant cites—put it, the plaintiff need only "complain of discrimination in sufficiently specific terms so that the employer is put on notice that the plaintiff believes he or she is being discriminated against on the basis of [a protected class]."  2009 WL 232789, at *6; *see De Souza v. Planned Parenthood Fed'n of Am., Inc.*, 21-cv-5553 (LGS), 2022 WL 2047580, at *3 (S.D.N.Y. June 7, 2022) (noting that communication must be "sufficiently specific to make it clear that the employee is complaining about" prohibited conduct).  Here, Plaintiff's alleged objections sufficiently put Defendant on notice that Plaintiff was opposing *not* Defendant's "immoral" conduct, but rather, Defendant's purported discrimination against Ms. Doe.

Moreover, while an employee must clarify that she is complaining about unlawful conduct, she need not use any specific words in doing so.  *See Butler*, 2020 WL 6639121, at *2; *see also Zhou v. State Univ. of New York Inst. of Tech.*, 499 F. App'x 105, 108 (2d Cir. 2012) ("There is no

9

requirement that, to have engaged in protected conduct and thus presented a *prima facie* claim of retaliation, an employee must have used specific words."). *Hubbard* illustrates this point. *See* 347 F. App'x at 681. In *Hubbard*, the Second Circuit upheld a jury finding that the plaintiff's email to her supervisor constituted protected activity under Title VII where the email indicated differential treatment between the plaintiff and her male coworkers. *Id.* The Court focused on the email's second sentence, which referred to "guys." *Id.* The email's second sentence stated: "IT IS REALLY NICE TO FIND OUT THAT THE ENTIRE SERVICE DEPT GOT THEIR REVIEW/RAISES THAT WERE DUE IN JULY 2003. WHICH WOULD BE 10–12 GUYS/TECHNICIANS." *Id.* As this sentence—and its invocation of differential treatment based on gender—demonstrates, the complaint need not have a particularly "legal" rather than a "moral" slant to constitute protected activity. It need only identify the alleged unlawful conduct at issue. *See id.*

The cases Defendant relies on do not suggest otherwise. For example, in *Durant v. Union Local 237*, the plaintiff had been assigned to work in a storeroom, performing stock worker duties. 12-cv-1166 (NGG) (JMA), 2013 WL 1232555, at *1 (E.D.N.Y. Mar. 4, 2013), *report and recommendation adopted*, 2013 WL 1247520 (E.D.N.Y. Mar. 26, 2013). The plaintiff complained to her union that she was working "out of title" and did not receive proper compensation and training for her work. *Id.* The plaintiff further alleged that she "reported" to the union that her supervisors and co-workers were not complying with storeroom rules, that her co-workers were causing a "hostile work environment" by arguing with her about how she operated the storeroom, and that her supervisors disregarded *unspecified* complaints that she made to them. *Id.* Ultimately, the plaintiff was terminated and she subsequently sued, alleging that the union retaliated against her. *See generally id.* The court held that the plaintiff's retaliation claims failed, as none of her

10

complaints indicated that she believed she was being mistreated because of her race, gender, disability, or any other protected characteristic.  *Id.* at *8.

Surely, the defendant in *Durant* could not have "reasonably understood" the plaintiff's complaints to be about discriminatory conduct, as the plaintiff never suggested to the union that she was being mistreated due to her race, gender, disability, or any other protected characteristic.  *Id.*  Thus, without more, the court in *Durant* could not find that the plaintiff had put the union on notice of her protected activity.  *Id.*  In this case, by contrast, Plaintiff's complaints reflected her opposition to Defendant's alleged discrimination against Ms. Doe for her health condition, something that, based on Plaintiff's allegations, Defendant could have reasonably understood.  *See, e.g.*, Compl. ¶¶ 30, 36.

Defendant also relies on *Krasner v. HSH Norbank AG*, in which the plaintiff sued his former employer for sex discrimination and retaliation.  *See generally* 680 F.Supp.2d 502 (S.D.N.Y. 2010).  In *Krasner*, the plaintiff's supervisor and another employee had had an affair, which the plaintiff reported to his company due to the "escalating unpleasantness" that the affair was causing in the workplace.  *Id.* at 510–511.  The company subsequently terminated the plaintiff, leading him to sue the company for retaliation under Title VII.  *See generally id.* The plaintiff claimed that his complaints about the affair were reports of sex discrimination and thus protected activity.  *See generally id.* The court, however, held that the retaliation claim failed, as the plaintiff's complaints were "entirely gender-neutral," failed to "express any concern over gender-based discrimination," and did not include "anything that he characterized, or that reasonably could be characterized, as sex discrimination."  *Id.* at 520, 521.  As such, the defendant had "no way to understand" the plaintiff's complaints as being about sex discrimination.  *Id.* at 521.

11

Whereas the plaintiff in *Krasner* had failed to complain of any discriminatory conduct to his company, not so here. In this case, Plaintiff complained of Ms. Doe's termination for her health condition—plainly identifiable discriminatory conduct. For as much as Defendant would like this Court to believe otherwise, the court in *Krasner* did not hold that the plaintiff's complaints failed to constitute protected activity because they only showed his "moral" objection to the conduct at issue. The court held, rather, that the plaintiff's complaints did not constitute protected activity because the plaintiff was not objecting to any conduct that could be reasonably characterized, and thus understood, as sex discrimination. *See id.*

A quote from the court's opinion in *Krasner* can perhaps best summarize the distinction between *Krasner* and this case. *See id.* The court stated that "the overall content and context of Krasner's internal complaints suggest, at most, a consensual affair that—while perhaps unfair, bad for morale, and detrimental to the department and the company—in itself harmed no one on account of a protected characteristic." *Id.* As alleged here, by contrast, Ms. Doe allegedly suffered harm on account of a protected characteristic, *i.e.*, her health condition.

Defendant also makes various arguments regarding Plaintiff's allegation that she "threatened to resign if she was required to illegally terminate Ms. Doe." Compl. ¶ 36. These arguments fail, as they construe Plaintiff's allegations not in her favor, and improperly dispute whether certain factual events occurred. First, Defendant argues that the fact that the phrase "illegally terminate" was not in quotations in the Complaint "confirms that it was never uttered to Mr. Cahill." Def.'s Mem. Supp. at 9. However, the lack of quotations does not confirm anything. At the motion to dismiss stage, the Court does not confirm whether alleged factual events actually took place. Rather, the Court assumes that the factual allegations are true and leaves the factual development for discovery (should the case survive the motion to dismiss). In this case, Plaintiff

12

and Mr. Cahill will presumably sit for depositions, at which time the Parties will endeavor to determine exactly what Plaintiff said to Mr. Cahill.  For now, however, arguments over whether Plaintiff in fact spoke certain words are inappropriate, as this Court assumes that Plaintiff did, indeed, make all the statements alleged in the Complaint, regardless of mere quotation mark placement.

Moreover, while it is entirely possible that Plaintiff never uttered "illegally terminate" to Mr. Cahill, and Plaintiff's attorney added the word to the Complaint in an "expository manner" as Defendant argues, this Court is not at liberty to construe the allegation in such a way.  Def.'s Mem. Supp. at 9.  To do so would construe the allegation far and away from Plaintiff's favor, which is impermissible.  This Court must instead draw the reasonable inference in Plaintiff's favor and assume, based on the allegation, that she informed Mr. Cahill that she would resign if she had to illegally terminate Ms. Doe.

Defendant alternatively argues that even if Plaintiff had used the word "illegally" to Mr. Cahill, the word would not render Plaintiff's statements protected activity.  *See* Def.'s Mem. Supp at 9.  Defendant is correct that an empty "buzzword" is insufficient to establish protected activity. *See Foster v. Humane Soc. of Rochester & Monroe Cnty., Inc.*, 724 F.Supp.2d 382, 395 (W.D.N.Y. 2010).  Accordingly, in analyzing Plaintiff's complaint to Mr. Cahill, this Court "must look at the substance of her complaint, not the terminology that she used." *Id.*  However, the substance of Plaintiff's complaint "suggests that the complained-of activity [was], in fact, unlawfully discriminatory." *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 17 (2d Cir. 2013) (citing *Foster*, 724 F.Supp.2d at 395).

In arguing otherwise, Defendant relies on *Foster*, where the Court held that the plaintiff had not established her Title VII retaliation claim where her complaints had nothing to do with

13

unlawful discrimination.  *See* 724 F.Supp.2d at 395.  While the plaintiff in *Foster* had complained about problems at work, her complaints did not suggest that she was facing sex discrimination. *See id.*  Here, however, Plaintiff's alleged complaints wholly concerned discrimination against Ms. Doe for her health condition.  As such, the word "illegal" aside, Plaintiff's alleged complaints were sufficiently substantive to constitute protected activity.

Defendant also argues that Plaintiff's suggestion to alternatively subject Ms. Doe to a less severe disciplinary action "proves that [Plaintiff] did not believe much less state that termination of Ms. Doe under the circumstances would be illegal."  Def.'s Mem. Supp. at 9.  Defendant even argues that "[t]he fact that Plaintiff suggested lesser discipline for Ms. Doe eliminates the possibility that she reasonably believed (and conveyed her belief) that discipline was unlawful." *Id.* at 12.  However, Plaintiff's suggestions for alternative, lesser disciplinary action do not "prove" or "eliminate" anything.  Construing the allegations in Plaintiff's favor, it is plausible that Plaintiff could have simultaneously opposed unlawful termination while pleading for some form of practical relief on Ms. Doe's behalf.  After all, Plaintiff alleges that she reacted to the news of Ms. Doe's termination by being "shocked with [Defendant's] decision to terminate Ms. Doe" and "explain[ing] to Ms. Cahill her belief that Ms. Doe should not be terminated for a minor policy violation, given Ms. Doe's suicide and apparent mental health crisis."  Compl. ¶¶ 29–30.

If anything, Plaintiff's comments regarding a less severe form of discipline actually lend themselves to the reasonable inference that Ms. Doe's security violation was a pretext for her termination.  Had Defendant proposed a less severe form of discipline for Ms. Doe's alleged security policy violation at the outset, such discipline might not have given rise to the inference that Defendant was discriminating against Ms. Doe.  Rather, a less severe form of discipline might have appeared more legitimate to Plaintiff under the circumstances, rather than pretextual.  Indeed,

14

the very severity of termination further supports Plaintiff's allegations that Defendant engaged in unlawful conduct.  In any event, Defendant cites no authority for the proposition that Plaintiff's comments regarding lesser disciplinary action foreclose her from having engaged in protected activity.  Defendant is free to, and presumably will, ask Plaintiff about her statements during her deposition.  However, these additional alleged statements, when construed in Plaintiff's favor, do not negate Plaintiff's alleged engagement in protected activity.

Defendant's remaining arguments fail for largely the same reasons.  Plaintiff's ADA and NYSHRL retaliation claims, as alleged, thus suffice to withstand the motion to dismiss.

## II.    NYLL § 740 RETALIATION CLAIM

Under NYLL § 740—the NYLL's "whistleblower" provision—an employer cannot retaliate "against an employee . . . because such employee . . . discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that the employee reasonably believes is in violation of law, rule or regulation . . . or objects to, or refuses to participate in any such activity, policy or practice."  NYLL § 740(2)(a), (c).  To state a claim under the provision, "a plaintiff must plausibly allege: '(1) an activity protected by the statute; (2) a retaliatory action; and (3) some causal connection between the protected activity and the adverse action.'"  *Id.* (citing *Callahan v. HSBC Sec. (USA) Inc.*, 22-cv-8621 (JPO), 2024 WL 1157075, at *6 (S.D.N.Y. Mar. 18, 2024)).

As with Plaintiff's other two claims, Defendant only disputes the protected activity element of the NYLL claim.  For this element, "while an employee need not specify the actual law, rule or regulation violated when making a complaint to a supervisor, she must identify the particular activities, policies or practices in which the employer allegedly engaged, so that the complaint provides the employer with notice of the alleged complained-of conduct."  *Alam v. Fairstead*

15

*Mgmt. LLC*, 24-cv-849 (NRB), 2025 WL 622587, at *11 (S.D.N.Y. Feb. 26, 2025) (cleaned up) (citing *Thacker v. HSBC Bank USA, N.A.*, 22-cv-7120 (GHW), 2023 WL 3061336, at *6 (S.D.N.Y. Apr. 24, 2023)); *see Gilmore v. Saratoga Ctr. for Care, LLC*, 19-cv-888 (LEK), 2025 WL 48620, at *10 (N.D.N.Y. Jan. 8, 2025) (noting that complaint need not specify actual law, rule, or regulation violated); *Webb-Weber v. Cmty. Action for Human Servs., Inc.*, 23 N.Y.3d 448, 453 (2014).

As a plaintiff may bring identical claims under both NYLL § 740 and the NYSHRL, Plaintiff has plausibly alleged retaliation under NYLL § 740 for the reasons already discussed. *See McSweeney*, 2025 WL 966022, at *44. Indeed, Plaintiff has alleged that she complained of, and refused to participate in, "an activity, policy or practice of the employer that is in violation of law, rule or regulation," *i.e.*, terminating Ms. Doe for her health condition in purported violation of the ADA and NYSHRL. *Id.* As such, Plaintiff's claim suffices to survive a motion to dismiss.

Defendant's arguments to the contrary are similar to those it made against Plaintiff's ADA and NYSHRL claims. Mainly, Defendant argues that "Plaintiff [*sic*] allegations only establish that she had a moral or personal opposition to EWS's decision to terminate Ms. Doe." Def.'s Mem. Supp. at 12. Yet, as with before, the cases Defendant cites do not support its arguments. *See* Def.'s Mem. Supp. at 11 (citing *Thacker*, 2023 WL 3061336, at *9 and *Pierce v. Better Holdco, Inc.*, 22-cv-4748 (AT), 2023 WL 6386920, at *6 (S.D.N.Y. Sept. 29, 2023)).

For example, Plaintiff relies on *Thacker*, in which the court held that the plaintiff's allegation that she "met with Legal and Compliance . . . to discuss changing [her] reporting structure from [one particular individual] to someone else[,] as his legally dubious decisions were placing [plaintiff's] licenses at risk" failed to identify "the particular activities, policies or practices in which the employer allegedly engaged, so that the complaint provides the employer with notice

16

of the alleged complained-of conduct." 2023 WL 3061336, at *8. Here, by contrast, there is no question as to the particular "activities, policies or practices" of Defendant's to which Plaintiff objected. There is no other way to interpret Plaintiff and Mr. Cahill's conversation as being about anything other than Defendant's allegedly discriminatory termination of Ms. Doe. Whereas the court in *Thacker* did not want to improperly "read into Plaintiff's complaint a statement that she identified to Legal and Compliance the particular activities . . . that she believed were 'legally dubious,'" this Court is not faced with that problem. *Id.* Here, the Complaint adequately identifies Defendant's complained-of conduct.

Defendant also relies on *Pierce*, in which the plaintiff sued her former employer and its executives claiming that they retaliated against her for accusing them of violating securities and employment laws. *See* 2023 WL 6386920, at *1. Ultimately, the court found that some of the plaintiff's statements regarding supposed illegal conduct lacked sufficient detail to be protected activity under NYLL § 740. *See id.* at *7. The court held, for instance, that one of the plaintiff's complaint's regarding an email sent by the company's CEO was "devoid of facts indicating why [the plaintiff] would believe that the email violated the law." *Id.* at *7. Here, the Court is not left wanting for such facts. The Complaint adequately alleges facts indicating the basis for Plaintiff's belief that Defendant's termination of Ms. Doe was illegal.

Defendant's remaining arguments fail. Plaintiff's NYLL § 740 claim, as alleged, thus suffices to survive the motion to dismiss.

17

## **CONCLUSION**

For the foregoing reasons, the Motion to dismiss is DENIED.

**SO ORDERED.**

/s
Steven L. Tiscione
United States Magistrate Judge
Eastern District of New York

Dated: Central Islip, New York
June 30, 2025